1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

WULFCO,

          Plaintiff,

   v.

NYE COUNTY,

          Defendant.

Case No. 2:24-cv-00223-RFB-DJA

**ORDER**

10    Before the Court is Defendant Nye County's Motion to Dismiss. ECF No. 19. For the

11   following reasons, the Court grants the Motion to Dismiss.

12    **I.    FACTUAL ALLEGATIONS**

13    The Yellow Pine Solar Project is a photovoltaic solar power project currently under

14   construction in Clark County, Nevada. Kiewit Power Constructors, the general contractor for the

15   Yellow Pine Project, contracted with Plaintiff Wulfco to provide water for the project. Plaintiff

16   owns the water rights to a well in Nye County, Nevada. Since 2005, Plaintiff has pumped regularly

17   from the well. On March 17, 2022, Plaintiff's application for 50 Acre-feet of water ("AFA") as

18   provision of water for the Yellow Pine Solar Project was granted. The permit lasted a year and

19   supplied the Yellow Pine Project as anticipated. Subsequently, Plaintiff filed a renewal application

20   to continue to provide the water needed for construction of the Yellow Pine Project.

21    In 2023, the Division of Water Resources ("DWR") sent a letter to the Nye and Clark

22   County Commissioners for a non-binding recommendation. On November 14, 2023, Nye County

23   filed a protest letter with an attachment ("Protest Attachment"). Plaintiff alleges that the assertions

24   in the Protest Attachment are false and designed to thwart the approval of the application by the

25   DWR.

26    The Protest Attachment demanded Plaintiff's renewal application be denied unless Plaintiff

27   drills another well in Nye County. Furthermore, it stated that Plaintiff's renewal application sought

28   to "further degrade the water resources of the Town of Pahrump and could cause undue damage"

to Pahrump's underground water supply and exacerbate the decline of groundwater levels in the Pahrump Valley Hydrographic Basin. Plaintiff contends that the access to water sought in the renewal application does not impose additional negative impacts to the Pahrump Valley Hydrographic Basin.

Plaintiff alleges that Nye County, in tandem with its false assertions in the protest letter attachment, falsely disparaged Plaintiff in the media in an attempt to prevent approval of the renewal application. Plaintiff asserts that their allegations of public disparagement are evidenced by an article in the Pahrump Valley Times, quoting several Nye County Commissioners falsely accusing Plaintiff of violating laws or regulations.

On January 30, 2024, an unmarked vehicle from the Nye County Sherriff's Office followed a vehicle driven by a contractor for the Yellow Pine Project. The contractor was transporting water from Plaintiff's well to the project site in Clark County. While in Clark County, the Nye County police vehicle initiated a traffic stop and asked the contractor who he worked for and what he was hauling. When the driver said that he was hauling water, the officer stated that in his opinion, it was illegal to transport the water from Nye County to Clark County. The officer permitted the driver to leave the stop without issuing a citation, or identifying why the contractor was stopped. Subsequently, Plaintiff discovered that the officer who initiated the traffic stop had contacted Nye County officials not directly affiliated with the Nye County Sherriff's Office regarding the incident.

Plaintiff alleges that Nye County officials have used similar tactics in the past to harass and intimidate other Nye County owners of water rights into not renewing those rights. Plaintiff alleges that Nye County's actions are directed specifically against Plaintiff in an attempt to coerce Plaintiff into building a new well in Nye County.

## II.    PROCEDURAL HISTORY

Plaintiff Wulfenstein Construction Company ("Wulfco") initiated this action by filing a complaint on February 1, 2024. ECF No. 1. On May 20, 2024, Defendant Nye County filed a motion to dismiss. ECF No. 10. On June 11, 2024, the Court granted the parties' stipulation for an extension of time for Plaintiff to file an amended complaint. ECF Nos. 12, 13. Plaintiff filed the

1   operative First Amended Complaint ("FAC") on June 14, 2024. ECF No. 14. Defendant filed a

2   motion to dismiss the FAC on June 28, 2024. ECF No. 19. After an extension of time, the motion

3   was fully briefed by July 26, 2024. ECF Nos. 20, 21, 22, 24. On November 25, 2024, Magistrate

4   Judge, Daniel J. Albregts, granted Defendant's motion to stay discovery pending the resolution of

5   the motion to dismiss the FAC. ECF No. 44.

6        The Court's Order follows.

7   **III.    LEGAL STANDARD**

8       **A.  Motion to Dismiss**

9        An initial pleading must contain "a short and plain statement of the claim showing that the

10  pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure

11  to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion

12  to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and

13  are construed in the light most favorable to the non-moving party." <u>Faulkner v. APT Sec. Services,</u>

14  <u>Inc.</u>, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

15       To survive a motion to dismiss, a complaint need not contain "detailed factual allegations,"

16  but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements

17  of a cause of action. . . ." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp.</u>

18  <u>v. Twombly</u>, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains

19  "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,"

20  meaning that the court can reasonably infer "that the defendant is liable for the misconduct

21  alleged." <u>Id.</u> at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on

22  the pleading standard described in <u>Twombly</u> and <u>Iqbal</u>, has held that for a complaint to survive

23  dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences

24  from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss v. U.S.</u>

25  <u>Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).

26  **IV.    DISCUSSION**

27      **A.  Fifth and Fourteenth Amendment Due Process Violations**

28       Plaintiff's First Amended Complaint alleges that Defendants violated their Fifth and

1   Fourteenth Amendment rights when a Nye County Sheriff conducted an improper stop of
2   Plaintiff's vehicle on January 30, 2024. At the time of the stop, Plaintiff was transporting water
3   from Nye County to the Yellow Pine Solar Project in Clark County. Defendant Contends that the
4   enforcement action was initiated because Plaintiff was in violation of a criminal provision. Thus,
5   Defendant argues, there was no constitutional violation.

6        The Fifth Amendment prohibits the federal government from depriving persons of due
7   process, while the Fourteenth Amendment explicitly prohibits deprivations without due process
8   by states. Bingue v. Prunchak, 512 F.3d 1169, 1174. To establish a due process violation, a plaintiff
9   must show that they had a protected property interest under the Due Process Clause and must then
10  establish that they were deprived of the property without receiving the process they were
11  constitutionally due. Clements v. Airport Authority of Washoe Cnty., 69 F.3d 321, 331 (9th Cir.
12  1995). Courts use the Eldridge test to evaluate whether a plaintiff has been deprived of
13  constitutionally due process. The test requires the balancing of the following three factors: (1) the
14  private interest that will be affected by the official action; (2) the risk of an erroneous deprivation
15  of such interest through the procedures used, and the probable value, if any, of additional or
16  substitute procedural safeguards; and (3) the governments interest, including the function involved
17  and the fiscal and administrative burdens that the additional or substitute procedural requirement
18  would entail. Mathews v. Eldridge 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

19       In this instance, Plaintiff has not adequately plead their claim alleging due process
20  violations. First, Plaintiff fails to identify a protected property interest under the Due Process
21  Clause. Second, Plaintiff fails to identify the private interest affected by the official action, any
22  risk of erroneous deprivation, or the government's interest and potential burdens that the additional
23  or substitute procedural requirement would entail. Third, The First Amended Complaint does not
24  establish whether Plaintiff is alleging violations of substantive or procedural due process. The
25  Court finds that Plaintiff has failed to adequately state a claim alleging violations of the Due
26  Process Clause.

27       The Due Process Clause of the Fourteenth Amendment prohibits states from "depriving
28  any person of life, liberty, or property, without the due process of law." U.S. Const. Amend. XIV.

1    The procedural guarantees of due process apply when a constitutionally protected liberty or
2    property interest is at stake. <u>Wolf v. McDonnell</u>, 418 US. 539, 557-58, 94 S. Ct. 2963, 41 L. Ed.
3    2d 935 (1974). The Court finds that Plaintiff has failed to state a claim upon which relief can be
4    granted because Plaintiff has not established the existence of a liberty interest. <u>Sandin v, Conner</u>,
5    515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

6    **B.  Equal Protection Violation**

7    Plaintiff's First Amended Complaint alleges that Defendants "singled out" Plaintiff and
8    treated them differently than other companies or entities similarly situated when Defendant
9    directed the Nye County Sheriff to conduct an improper stop of Plaintiff's vehicle. Defendant
10    challenges Plaintiff's allegations arguing that the stop was permissible because at the time of the
11    stop, Plaintiff was illegally transporting water from Nye County to Clark County. Additionally,
12    Defendant asserts that they acted under color of the law in a non-discriminatory manner to protect
13    the interests of Nye County.

14    The Ninth Circuit has held that "The first step in equal protection analysis is to identify the
15    state's classification of groups. The next step in equal protection analysis is to determine the level
16    of scrutiny." <u>Country Classic Dairies, Inc. v. Mont., Dep't of Commerce Milk Control Bureau</u>, 847
17    F.2d 593, 596 (9th Cir. 1988). Equal protection analysis requires strict scrutiny of a legislative
18    classification only when the classification impermissibly interferes with the exercise of a
19    fundamental right or operates to the peculiar disadvantage of a suspect class. <u>Mass. Bd. of Ret. v.</u>
20    <u>Murgia</u>, 427 U.S. 307, 312, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976) (*per curiam*) (footnote
21    omitted).

22    Plaintiff alleges that the enforcement action resulting in their water transport vehicle being
23    stopped by Nye County Sheriffs was specifically and discriminatorily directed at Plaintiff in an
24    attempt to coerce Plaintiff into building a well in Nye County. However, throughout the First
25    Amended Complaint Plaintiff fails to identify Defendants classification of groups or to identify
26    how Defendants classification impermissibly interfered with Plaintiff's fundamental rights.

27    The Ninth Circuit recognizes equal protection claims brought by a "class of one" where
28    the plaintiff does not allege membership in a class or group. To successfully plead a "class of one"

equal protection claim, a plaintiff must establish that they have been treated differently from others similarly situated and that there is no rational basis for the difference in treatment. 180 Land Co. LLC v. City of Las Vegas, 833 F. App'x 48, 50 (9th Cir. 2020). In this instance, Plaintiff does not plead sufficient facts to support their assertion that Defendants have treated similarly situated parties differently. While Plaintiff makes assertions throughout the First Amended Complaint regarding the alleged discriminatory treatment they received, Plaintiff provides no factual support for these assertions.

The Court finds that Plaintiff has failed to state a claim upon which relief can be granted for both its first and second causes of action.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss (ECF No. 19) is **GRANTED** and Plaintiff's First Amended Complaint is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint by April 30, 2025. If Plaintiff fails to file amended complaint, the Court will dismiss the instant claims with prejudice.

**DATED:** March 30, 2025.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**